IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | |
|---|---|
| JOY MADUBUIKE, as administrator of the estate of Austin Madubuike and on behalf of all wrongful death beneficiaries of Austin Madubuike,<br><br>    Plaintiff,<br><br>  v.<br><br>NEWMAN UNIVERSITY, INC., CLIFF BROWN and OUACHITA BAPTIST UNIVERSITY,<br><br>    Defendants. | CASE NO. 6:23-cv-06131-SOH |

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO EXCLUDE TESTIMONY OR RALPH SCOTT, JR., PH.D.**

Defendants Newman University, Inc. and Cliff Brown (hereinafter "Defendants") for their Brief in Support of their Motion to Exclude Testimony of Ralph Scott, Jr., Ph.D., state the following:

**INTRODUCTION**

Plaintiff, Joy Madubuike, as administrator of the estate of Austin Madubuike and on behalf of all wrongful death beneficiaries of Austin Madubuike (hereinafter "Plaintiff") has designated Ralph Scott, Jr., Ph.D., (hereinafter "Dr. Scott") as an expert witness she plans to call at trial to provide various opinions related to the amount of monetary damages the jury should award in this matter. Dr. Scott's opinions relate to loss of life damages as well as damages for loss of future income, loss of corresponding fringe benefits, and lost support for the surviving family related to the Estate of Austin Madubuike. See, generally, the Report of Ralph Scott, Jr., Ph.D., a true and correct copy of which is attached as Exhibit A.

153042121.1

The Court should exclude Dr. Scott's opinions and testimony for several reasons. First, Dr. Scott's Report is unreliable because it does not address the pertinent issue of the value Austin Madubuike would have placed on his own life. Second, Dr. Scott's testimony is unreliable because it does not satisfy any of the Daubert factors used to determine reliability of expert opinions. Third, Dr. Scott's opinions and testimony are not admissible to establish loss of life damages because that inquiry falls within the purview of the Jury. Fourth, the entirety of Dr. Scott's Report should be excluded pursuant to the requirements of Federal Rule of Civil Procedure 26(a)(2).

## LEGAL STANDARD

Arkansas' rules for admissibility of expert testimony are prescribed by Ark. R. Evid. 702 and the holding of *Farm Bureau Mutual Ins. Co. of Ark., Inc. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000). Expert opinions must be based on a reliable, tested methodology and a relevant, reliable factual foundation.

Under Arkansas Rule of Evidence 702, expert testimony may be offered only:

> If the scientific, technical, or other specialized knowledge will assist the tier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise.

Fulfilling its function as a gatekeeper, the trial court must determine whether an opinion an expert proposes to offer complies with Rule 702. *See* Ark. R. Evid. 104(a). This involves that the Arkansas Supreme Court sets out as a two-step inquiry: first, is the expert proposing to testify to scientific knowledge (i.e. is the testimony reliable); and second, will that knowledge assist the jury with understanding evidence or determining a fact in issue (i.e. is the testimony relevant)? *See Farm Bureau Mut. Ins. Co. v. Foote*, 341 Ark. 105, 116, 14 S.W.3d 512, 519 (2000).

Rule 702 is flexible, and the trial Court should consider a number of factors in reaching its ultimate decision on admissibility. *See Id*. Those factors are commonly known as *Daubert* factors,

which the Arkansas Supreme Court formally adopted in Foote.[1]  Id. at 115, 14 S.W.3d at 519.  In *Daubert*, the United States Supreme Court interpreted Federal Rule of Evidence 702 (identical to Arkansas' Rule 702) as imposing two distinct requirements for the admission of proffered expert testimony.  *Daubert v. Merrel-Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).  This inquiry is identical to the one expressed in Foote.  First, the evidence must be reliable – meaning that the underlying methodology from which the expert derives the evidence must have its basis in scientific knowledge.  Id. at 592-93.  Second, the evidence must be relevant, such that the proffered expert testimony must assist the jury with understanding evidence or determining a fact at issue.  *Id*.

## ARGUMENT

The testimony proffered by Dr. Scott both fails to address how Mr. Madubuike would have valued his life as Arkansas law requires, and it relies on valuation methods that fall outside of the accepted scientific standard for calculating damages.  His opinions on Mr. Madubuike's damages are both unreliable and irrelevant, and Dr. Scott must be excluded.

1. **Dr. Scott's Testimony is Unreliable Because It Does Not Address the Pertinent Issue: The Value Austin Madubuike Would Have Placed on His Own Life.**

Dr. Scott offers an opinion regarding Austin Madubuike's supposed lifetime earning capacity.  *See* Exhibit A.  This opinion, however, addresses only a one-size-fits-all statistical standard and fails to explain the value that Austin Madubuike would have placed on his own life.  Therefore, Dr. Scott's testimony is unreliable under Arkansas law and must be excluded.

---

[1] In adopting *Daubert*, the Arkansas Supreme Court noted that Ark. R. Evid. 702 are identical.  *Foote*, 341 Ark. At 116, 14 S.W.3d at 519.  Because the *Daubert* opinion has been expressly adopted as the controlling analysis or standard of expert testimony in Arkansas, Defendants' belief relies in part on federal cases decided under *Daubert*.

As the Arkansas Supreme Court has explained, "[l]oss-of-life damages seek to compensate a decedent for the loss of the value that the decedent would have placed on his or her own life." *Durham v. Marberry*, 356 Ark. 481, 492, 156 S.W.3d 242, 248 (2004). Further, it is incumbent on the estate to "present some evidence that the decedent valued his or her life, from which a jury could infer and derive that value and on which it could base an award of damages." See *One Nat'l Bank v. Pope*, 372 Ark. 208, 214, 272 S.W.3d 98, 102 (2008). In *One National Bank*, the court upheld a jury's loss of life award noting that the decedent was a mother of four and a grandmother, that she was close to her eldest daughter, that she lived with the man who she moved to Arkansas to be with, and that she died on her way to a family get together. *Id*. at 215, 272 S.W.3d at 103. Thus, the relationship that the *One National Bank* decedent cultivated and nurtured offered the jury some insight into how she would have valued her life.

Like the Arkansas Supreme Court, an Arkansas federal court has held that loss of life damages are inherently personal. See *McMullin v. United States*, 515 F.Supp.2d 914, 924 (E.D. Ark. 2007). In *McMullin*, the court found that an "objective, statistical standard" offered by expert witness as to loss of life damages could not meet the Daubert test. *Id*. The court reasoned that, "in particular, the Court agrees that the expert opinions offered could not be tested because they are 'attempting to quantify something which cannot truly de determined: what is the value of a human life?' " *Id*. In relying on the *McMullin* opinion, another Arkansas federal court struck the testimony of Dr. Scott, concluding that "an expert opinion similar to the one being proffered by Dr. Scott cannot be tested because the value a decedent would have placed on his own life cannot truly be determined." Smith v. Trans-Carrier, Inc., No. 4:15CV00253-BSM (E.D. Ark. May 2016). See Exhibit B, p 1.

153042121.1

Here, Dr. Scott proffered testimony impermissibly quantifies the value of Madubuike's life while failing to consider his relationships, family dynamics, or even his likes and interest. Instead, Dr. Scott proposed a one-size-fits-all measure of loss-of-life damages based on a forecast of any twenty-one-year-old's lifetime future earning capacity. This damages opinion value would be the same for any individual who falls into the same range of age, race, gender, and educational attainment. This is precisely the objective, statistical approach Arkansas court have found untestable and therefore unreliable. These courts recognize what Dr. Scott's proposed loss of life formula does not: human lives are not interchangeable. *See One Nat'l Bank v. Pope*, 372 Ark. 208, 215, 272 S.W.3d 98, 103 (2008).

Because Dr. Scott's methodology treats human lives as fungible, he can shed no light on how Austin Madubuike would have valued *his own* life. Dr. Scott's testimony is therefore unreliable and he should be excluded.

2. **Dr. Scott's Testimony is Unreliable Because It Does Not Satisfy Any of the Factors Used to Determine Admissibility of Expert Opinions.**

In addition to the reasons stated above, the *Daubert* Court discussed four factors for making a determination as to whether proffered expert testimony has a basis in valid principles and methodology:

1) whether the theory or technique can be and has been tested;

2) whether the theory or technique has been subject to peer review and publication;

3) the known rate of error of the technique and the existence and maintenance of standards controlling the technique's operation; and

4) whether the technique is generally accepted in the scientific community.

*Daubert*, 509 U.S. at 593-96. This list is non-exhaustive, so other factors might also be considered in the inquiry as well.

153042121.1

### a. Dr. Scott's Inclusion of Residual Value of Life in Excess of Earnings Capacity in His Calculations of Damages Fails the Daubert Analysis for Reliability

Dr. Scott's report indicates he has used the federal government's value of statistical value of life ("SVL") estimates to inform the jury as to the value of Mr. Madubuike's life. *See* Exhibit A. The use of SVL to establish loss of life damages is inherently unreliable under the *Daubert* standard. Plaintiff cannot show that this methodology meets any of the enumerated criteria listed above. In fact, courts have found that proponents of expert opinions "calculating" loss of life based on SVL have failed to show that the methodology has been generally accepted in the scientific community.

For instance, an Illinois federal court cited a study in the Journal of Forensic Economics finding that more than 80% of economists surveyed would not use SVL for the purpose of determining lost enjoyment of life. *Stokes v. John Deer Seeding Grp.*, No. 4:12-CV-04054-SLD, (citing Micheal L. Brookshire, et al., A 2009 Survey of Forensic Economists: Their Methods, Estimates, and Perspectives, 21 J. Forensic Econ. 5 (2009)). This study "must at least raise strong doubts as to whether [this] methodology can be termed 'generally accepted.'" *Id*. Ultimately, "there is no basic agreement among economists as to what element ought to go into life valuation." *Id*. (quoting Mercado v. Ahmed, 756 F. Supp. 1097, 1103 (N.D. Ill. 1991)). Obviously, Dr. Scott's method does not have general acceptance in the scientific community.

The opinions that Dr. Scott seeks to provide in this case are routinely excluded by federal courts in Arkansas. United States District Judge Brian S. Miller previously concluded that Dr. Scott's methodology is unreliable because it cannot be tested. *See Smith v. Trans-Carriers, Inc.*, No. 4:15-CV-253-BSM (E.D. Ark. May 17, 2016). After reciting the *Daubert* reliability factors, Judge Miller explained Arkansas law on loss-of-life damages does not provide the standard as to which an expert could apply his/her expertise, and consequently the expert testimony being

153042121.1

proffered by Dr. Scott is unreliable and therefore inadmissible. *Id*; *see also Hannibal, et al. v. TRW Vehicle Safety Sys., Inc.*, No 4:16-CV-904-JLH (E.D. Ark. Aug. 9, 2018) (explaining that "an overwhelming majority of courts from other jurisdictions" have found that the SVL methodology does not meet the *Daubert* standard and may not be admitted into evidence); *Travis v. Asus Computer International, et al.*, No. 6:18-CV-6042-BRW (E.D. Ark. Aug. 28, 2019) (excluding Dr. Scott's testimony for loss of life damages for the same reason set out in *Hannibal*); *Stovall v. Mack Trucks, Inc*., No. 4:16-CV-713-JM, 2022 (E.D. Ark. Oct. 21, 2022) (excluding Dr. Scott's expert testimony about loss of life damages based on SVL computations as unreliable and would not assist the jury in determining what value the decedent placed on her own human life as it has nothing to do with the decedent specifically); *Crouch v. Master Woodcraft Cabinetry, LLC*, No. 2:20-CV-00078-KGB, 2021 (E.D. Ark. Sept. 13, 2021) (excluding Dr. Scott's expert testimony about his loss of life calculations based on SVL data as unreliable and not helpful to the jury); *Hatfield v. Orneals*, 2024 WL 1555019 (W.D. Ark. Aprl. 10, 2024) (excluding Dr. Scott's expert testimony based in SVL valuation in loss of life damages, determining such evidence was inadmissible under *Daubert*).

### b. Dr. Scott's Calculation of Present Value of Potential Lifetime Earning Does Employee the Scientifically Accepted Methodology and Is Unreliable Under a Daubert Analysis

Dr. Scott's Expert Report contains a section entitled Present Value of Potential Lifetime Earnings which quantifies what Dr. Scott believes to be Mr. Madubuike's earning capacity had he remained alive. *See* Report, p. 2. Dr. Scott has outlined three different scenarios: anaverage male with some college, an average male college graduate, and a male attorney. However, each of these calculations has not utilized the generally accepted scientific method when calculating damages in wrongful death actions, which requires the inclusion of Personal Consumption.

In wrongful death cases, the forensic economist must address personal consumption, which is the amount of the decedent's personal expenditures that would not be available to the beneficiaries of the estate. The Comprehensive Guide to Economic Damages, Volume 2, 7th Ed., p. 375. The proper calculation of damages is generally the amount of lost earnings that the heirs could have reasonably expected to receive from the decedent if he or she had lived. *Id*. This is not what Dr. Scott has provided in his Report. Dr. Scott has only made a calculation as to the possible earnings of Mr. Madubuike, not what he would have contributed to Plaintiffs over his life time. The Report provided no documentation that Mr. Madubuike would have provided any support to his family members.

Personal Consumption is expressed as a dollar amount of the percentage of earnings, and it represents expenditures for food, clothing, transportation, as well as housing, transportation, and utilities. These normal and ordinary expenses would all decrease Mr. Madubuike's future earning capacity, which would reduce any economic damages to Plaintiff. Dr. Scott simply disregards this generally accepted method employed by forensic economists providing an artificially inflated valuation of lost earning capacity in his Report.

Plaintiff simply cannot meet the burden of demonstrating that Dr. Scott's methodology is reliable under the *Daubert* test for admissibility of expert opinion testimony. Therefore, the Court should exclude any effort to provide such opinions at trial.

**3. Dr. Scott's Opinions and Testimony are Not Admissible to Establish Loss of Life Damages Because that Inquiry Falls Within the Purview of the Jury.**

The value of a person's life is a matter firmly within the purview of the jury, and therefore expert testimony is not admissible to determine loss of life damages. Under Arkansas law, loss of life damages seek to compensate the decedent "for the loss of the value that decedent would have

153042121.1

placed on his or her own life." *Durham*, 156 S.W.3d at 249.  The Arkansas Supreme Court states, this concept – the value of human life – is uniquely within the understanding of a jury because:

> No rule has been established – and in the nature of things can be – for determining what compensation should be paid for loss of life, for pain and suffering, for loss or decrease of earning power, for mental anguish accompanied by physical injury, for loss of companionship, and for the various elements entering into damages actions.

*Durham*, 156 S.W.3d at 249.  A jury asked to determine a decedent's loss of life is considering "the destruction of the capacity to carry on life's activities." *Id*. at 247.  It is a task of measuring the immeasurable." *McMullen v. United States*, 515 F.Supp.2d 914, 927 (E.D. Ark. 2007).

The task of valuing loss of life is a particularly human undertaking; it is not something to be measured in dollars and cents because the worth of human life is incommensurate with money. *Bennett v. United States*, 4:04-CV00076-JLH (E.D. Ark. Mar. 3, 2005).  Allowing Dr. Scott to impose his unreliable opinions into an area that is well within the jury's ability to determine on its own would be unduly prejudicial to defendants because it would lend Plaintiff's damages theories the air of authority inherent to expert testimony while usurping the jury's role as the fact finder. For these reasons, Plaintiff should not be allowed to present Dr. Scott's testimony in support of their claims related to loss of life damages in this matter.

    **4. Dr. Scott's Expert Report Should Be Excluded for Failing to Meet the Requirements of Federal Rule of Evidence 26(a)(2).**

The expert opinion Report of Dr. Scott should be excluded under Federal Rule of Evidence 26(a)(2).  Rule 26(a)(2)(B) requires expert witnesses to provide a complete written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them."  Dr. Scott's report appears to contain various evolving methodologies and calculations that have not been fully disclosed, especially the underlying data utilized in the final computations

for loss of life damages.  The Report references "additional calculations" suggesting an incomplete initial disclosure.

The inclusion of Dr. Scott's report creates a prejudicial effect against Defendants.  Dr. Scott's Report contains a wide range of valuations which could confuse or mislead the jury given the Report's professed technical economic analysis even though the underlying models are without sufficient reliability.

## CONCLUSION

Expert testimony must be relevant and reliable.  *Farm Bureau Mutual Ins. Co. of Ark., Inc. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000).  Dr. Scott's proffered testimony will not assist a jury in calculating damages.  His objective, statistical method is unreliable in determining how Austin Madubuike would have valued his own life.  Because his opinions are unreliable, Dr. Scott's opinions on valuations of residual value of life and present value of potential lifetime earnings should be excluded, and the Court should grant Defendants' Motion to Exclude Testimony of Ralph Scott, Jr., Ph.D.

/s/ Alan L. Rupe
Alan L. Rupe, AR #2008115
LEWIS BRISBOIS BISGAARD & SMITH LLP
4600 Madison Avenue, Suite 700
Kansas City, MO 64112
Telephone: (816) 299-4244
Facsimile:  (816) 299-4245
alan.rupe@lewisbrisbois.com

*Attorney for Defendant Newman University, Inc.*

153042121.1

## CERTIFICATE OF SERVICE

I certify that on February 21, 2025, the above Brief in Support of Defendants' Motion to Exclude Expert Testimony of Ralph Scott, Jr., Ph.D. was filed using the court's CM/ECF system which sent notice to all counsel of record.

/s/ Alan L. Rupe
Alan L. Rupe

153042121.1